UNITED STATES of America,
Plaintiff-Appellee,

v.

Terrance Karl ALDEN and Leslie Phillips, Defendants-Appellants.

Nos. 83–2275, 83–2350.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1984.

Decided Aug. 21, 1984.

Ralph Friedericks, Asst. U.S. Atty. (Frederick J. Hess, U.S. Atty.), East St. Louis, Ill., for plaintiff-appellee.

Giles Franklin, Chicago, Ill., R. Thomas Day, Asst. Federal Public Defender, St. Louis, Mo., for defendants-appellants.

Before POSNER and FLAUM, Circuit Judges, and NICHOLS, Senior Circuit Judge.[*]

FLAUM, Circuit Judge.

This is a consolidated appeal following a jury trial in which the defendants were found guilty of attempting to escape from a federal penitentiary. The defendants claim that they were improperly denied the psychiatric assistance that they needed to prepare insanity defenses, and that the trial court erred in refusing to instruct the jury on their insanity defenses. We disagree, and we affirm the defendants' convictions.

I.

Defendants Alden and Phillips were inmates at the United States Penitentiary at Marion, Illinois. At approximately 9:30 p.m. on January 13, 1982, they were apprehended lying on the ground near the fence that surrounds the penitentiary. There was a hole in the fence, and near the hole prison guards found two makeshift hacksaws, some gloves, and a t-shirt. The defendants were dressed in white, apparently to camouflage themselves against the more than six inches of snow that was on the ground. An investigation later revealed that several windows in the defendants' housing unit had been cut, and that clothing had been stuffed in the defendant

Alden's bed to create the appearance that he was lying there.

On November 18, 1982, the defendants were indicted in federal district court and charged with attempting to escape from the Marion penitentiary in violation of 18 U.S.C. § 751(a) (1982). Shortly thereafter, each defendant gave notice that he intended to defend against this charge by claiming that he was insane at the time of the escape attempt. On December 15, 1982, each defendant requested the court to permit him to obtain an expert psychiatric witness to assist in his defense, as is permitted by 18 U.S.C. § 3006A(e) (1982). Two weeks later, the court and the parties agreed that each defendant would undergo a psychiatric examination at the federal penitentiary in Marion by qualified psychiatrists from the United States Medical Center for Federal Prisoners in Springfield, Missouri. The purpose of these examinations was to determine whether the defendants were sane at the time of their escape attempt and whether they were competent to stand trial. The examinations were conducted in January 1983, and in each case the psychiatrist concluded that the defendant was both sane at the time of the escape attempt and competent to stand trial.[1]

The defendants then moved the court again for psychiatric assistance. On March 16, 1983, the court held separate ex parte hearings for the defendants to determine their need for psychiatric assistance, as required by section 3006A(e). At his hearing, the defendant Alden testified that he wished to present a defense of temporary insanity. He stated that at the time of his escape attempt his marriage and family life were deteriorating and as a result he was "anxious" and "depressed," and experiencing "mood swings." Tr. at 388–89. He also stated that his only previous psychological counseling was with a prison psychologist that he had "developed a friendship with" more than five years earlier at another prison. Tr. at 393.

---

[*] The Honorable Philip Nichols, Jr., Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, is sitting by designation.

1. In Phillips's case, the psychiatrist did find that he had a possible cyclothymic disorder and might be an antisocial type.

At his hearing, the defendant Phillips testified that he believed he was God. He also stated that he was a self-taught hypnotherapist, that he had been hospitalized for dizzy spells many years earlier while he was in the Marine Corps, and that two of his cousins were mentally retarded and a third had been hospitalized as criminally insane. He stated further that he had attempted to escape from prison because "I can't help myself." Tr. at 406. He also indicated that his only previous psychological counseling was a visit several years earlier to a prison psychologist at a prison in Atlanta for treatment of possible symptoms of stress. He made only one visit to this psychologist because he was transferred to Marion after an attempted escape from the Atlanta prison.

After hearing the testimony at these ex parte hearings, the court below denied both defendants' requests for psychiatric assistance. The court gave its reasons as follows:

> The Court believes that a "reasonable showing of need" has not been demonstrated. First, the results of the psychiatric examinations of Alden and Phillips ... ordered by this Court, conclude that each was sane at the time of the alleged offense, and is competent to stand trial. These results alone give the Court serious reservations about ordering further psychiatric examination. Second, the Court believes that the assertion of the insanity defense to a charge typically involving long and detailed planning—escape from U.S.P. Marion—is immediately suspect. Third, and most importantly, the *ex parte* hearings of each defendant's request, in the Court's view, yielded no indication that insanity defenses are warranted here. The evidence presented at the *ex parte* hearing makes it abundantly clear to the Court that the qualified privileges of Section 3006A would be abused if further examinations are ordered.

Memorandum and Order, Crim. No. 82–40053 (S.D.Ill. April 4, 1983).

At the defendants' consolidated trial, they each attempted to establish a defense of insanity without any expert testimony. Alden had two of his fellow inmates testify on his behalf. Inmate Artie Dufur testified that he had lived in the same housing unit as Alden from June 1980 until July 1981 and that they had become close friends. Dufur described Alden's demeanor during this period as "easygoing" and "cheerful," and stated that he did not appear to have any mental or emotional problems at this time. Tr. at 217. Between July 1981 and January 1982, the time of the escape attempt, Dufur had some contact with Alden on eight to twelve occasions. He stated that during this time Alden often appeared to be withdrawn, anxious, and paranoid, and that his behavior was "erratic." Tr. at 220–21. Inmate Garvin Dale White testified that he saw Alden shortly after Alden was captured attempting to escape, and that for several hours Alden was "ranting and raving and screaming" about his wife and family. Tr. at 230–32. White also testified that he saw Alden after January 1982 on a few occasions and that he appeared "normal." Tr. at 236.

Alden himself testified about his mental state at the time of his escape attempt. He explained about his deteriorating family situation, and about the guilt, anxiety, and depression that this had caused him. He stated that he had been "obsessed with getting out of that prison," Tr. at 254, and that he could not control his conduct on the night of his escape attempt. He also stated that he had read some psychology books and that he believed that he had suffered a nervous breakdown that night, or that he had been "on the edge" of a nervous breakdown. Tr. at 257.

The defendant Phillips also testified on his own behalf. He again stated that he was God, and that he was in human form "to suffer, ... to feel and to experience." Tr. at 278. He also said that during the escape attempt he believed that he and Alden were invisible, that he could not prevent himself from trying to escape from prison, and that he was not insane. In addition, he testified as to many of the

details of the escape plan and the attempt itself. Garvin Dale White also testified briefly on Phillips's behalf, stating that Phillips was known as God throughout the prison community, and that he had heard Phillips tell Alden on the night of their escape attempt that they were invisible.

At the close of all the evidence, each of the defendants requested the trial court to instruct the jury that his insanity was in issue, and that therefore the burden was on the prosecution to prove beyond a reasonable doubt that he was sane at the time of the escape attempt. The trial court refused to give this instruction, holding that there was insufficient evidence of insanity to warrant placing the burden of proof on this issue on the prosecution. The court did, however, give the jury an instruction that allowed it to consider in each case whether the defendant's mental state prevented him from forming the specific intent required to commit the crime of escape. The jury found the defendants guilty, and this appeal followed.

## II.

We turn first to the question of whether the district court erred in not allowing the defendants the psychiatric assistance that they requested. Section 3006A(e) provides:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

It is clear that psychiatric assistance necessary to the preparation of an insanity defense is within the purview of this section.

*United States v. Schappel,* 445 F.2d 716, 719 (D.C.Cir.1971).

A test commonly used to determine whether psychiatric assistance is "necessary for an adequate defense" is the "private attorney" standard, which has been stated as follows: "The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Bass,* 477 F.2d 723, 725 (9th Cir.1973). *Accord Brinkley v. United States,* 498 F.2d 505, 510 (8th Cir.1974); *United States v. Theriault,* 440 F.2d 713, 717 (5th Cir.1971) (Wisdom, J., concurring), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). *Cf. United States v. Jonas,* 540 F.2d 566, 569 n. 3 (7th Cir.1976) (applying the "private attorney" standard to an indigent defendant's request for a trial transcript). While we find that this generally is an appropriate standard, it should not be applied too literally in this case. Here, the defendants were caught in the act of trying to escape, and thus their only conceivable defense was one based on a claim of insanity or some other condition indicating a lack of intent.[2] In a case such as this, if the defendant refuses to plead guilty, a reasonable private attorney might hire several psychiatrists to examine the defendant in the hope of establishing an insanity defense, however slim that hope might be. Thus, to require the government to pay for psychiatric services in this type of case just because a reasonable private attorney would do so might be to require the government to subsidize a "fishing expedition," which is not the purpose of section 3006A(e). *See United States v. Sailer,* 552 F.2d 213, 215 (8th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). Accordingly, it is appropriate for the district court to satisfy itself that a defendant may have a plausible defense

**2.** Although ultimately the defendants received an instruction referring not to insanity but to lack of specific intent to escape, there is no indication in the record that they made this distinction in their § 3006A(e) motion.

before granting the defendant's section 3006A(e) motion for psychiatric assistance to aid in that defense. *See id.* ("[w]hile a trial court need not authorize an expenditure under subdivision (e) for a mere 'fishing expedition', it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge"); *United States v. Hamlet,* 480 F.2d 556, 557 (5th Cir.) (request for psychiatric assistance must be "meritorious and made in good faith"), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 452, 38 L.Ed.2d 317 (1973).

▮ The decision to grant or deny a motion under section 3006A(e) is one committed to the discretion of the district court, and a district court's decision will be disturbed on appeal only if it constitutes an abuse of discretion. *See United States v. Lawson,* 653 F.2d 299, 304 (7th Cir.1981); *United States v. Valtierra,* 467 F.2d 125, 126 (9th Cir.1972). We find no abuse of discretion in the district court's refusal to grant the defendants' motions under section 3006A(e). The court properly appointed psychiatrists to determine the need of the defendants for psychiatric assistance at trial, and it was entirely appropriate for the court to consider the conclusions of those experts in ruling on the defendants' requests. *See United States v. Lawson,* 653 F.2d at 304; *United States v. Lincoln,* 542 F.2d 746, 749 (8th Cir.), *cert. denied,* 429 U.S. 1106, 97 S.Ct. 1138, 51 L.Ed.2d 558 (1976); *United States v. Hamlet,* 480 F.2d

556, 557 (5th Cir.1973).[3] The district court also properly conducted ex parte hearings on the defendants' motions, and the court explicitly stated that the impression that it received from those hearings was the most important factor in its decision. Because the district court was in a position to observe the defendants personally as they presented their claims, we accord this statement great weight in our review of the district court's decision.

▮ In addition, we have reviewed carefully the transcript of the ex parte hearings, and we find nothing that gives us cause to question the district court's ruling. In Alden's case, his statements concerning his emotional stress may have been sincere, but they fall short of establishing a plausible insanity defense.[4] Phillips's testimony was more bizarre, but in view of his record of previous escape attempts, the fact that he had no history of mental illness,[5] and the finding of sanity by the court-appointed psychiatrist, the district court was justified in discounting Phillips's self-serving statements that he was God and that he was compelled to try to escape from prison. In short, we find that the district court gave adequate consideration to the defendants' requests for psychiatric assistance, and we find no error in its refusal of those requests.[6]

### III.

▮ We now turn to the defendants' claim that the district court erred in not

---

3. Our conclusion would be different if the first examination had been ordered only to determine the defendants' competency to stand trial. *See generally United States v. Reason,* 549 F.2d 309, 311 (4th Cir.1977).

4. In this circuit, persons are not responsible for criminal conduct by reason of insanity if at the time of such conduct as a result of mental disease or defect they lack substantial capacity either to appreciate the wrongfulness of their conduct or to conform their conduct to the requirements of the law. *United States v. Shapiro,* 383 F.2d 680, 683–87 (7th Cir.1967) (en banc).

5. Neither defendant had any significant personal or family history of mental or psychological illness, which is a proper factor to consider on a § 3006A(e) motion for psychiatric assistance. *See, e.g., United States v. Bass,* 477 F.2d at 725.

6. The district court stated its belief that the considerable detailed planning and forethought that preceded the defendants' escape attempt belied their claims of insanity. Without the benefit of expert testimony, we have no way of knowing whether this belief was well-founded. However, we find that the district court's other stated reasons for its decision adequately support that decision.

giving the requested insanity instruction.[7] In this circuit, a defendant is entitled to an insanity instruction only if he or she first introduces some evidence of insanity sufficient to warrant placing the burden on the prosecution to prove that the defendant was sane at the time of the crime charged. *United States v. Sennett*, 505 F.2d 774, 778 (7th Cir.1974); *United States v. Gorman*, 393 F.2d 209, 211 (7th Cir.), *cert. denied*, 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968). Whether the evidence is sufficient to warrant an insanity instruction is a question for the trial court. *United States v. Sennett*, 505 F.2d at 778. In this case the district court found the evidence of insanity to be insufficient to warrant an insanity instruction for either defendant, and we affirm its decision.

■ The defendant Phillips's evidence of insanity consisted primarily of his own bizarre testimony, which included statements that he was God and that during his escape attempt he believed that he was invisible. It apparently was Phillips's hope that this unusual testimony would convince the jury that he was insane. The district court was not so persuaded, however. It stated: "The Court would make an observation that in observing his manner and demeanor, that Mr. Phillips definitely lacked sincerity.... I gained the impression that he had a propensity to say whatever was convenient to suit his purpose at a particular time." Tr. at 304–05. We have no cause to question the district court's finding that Phillips's testimony was not credible. Since "a trial judge should give a requested jury instruction only if *credible* evidence in the record would support a verdict based on that instruction," *United States ex rel. Bacon v. DeRobertis*, 728 F.2d 874, 875 (7th Cir. 1984) (per curiam) (emphasis in original),

the district court properly denied Phillips's request for an insanity instruction.

■ The court below also properly denied Alden's request. While we have no reason to doubt the truth of Alden's claim that at the time of his escape attempt he was suffering from emotional stress as a result of his family problems, it is a large leap from this fact to the conclusion that he was legally insane. *See supra* note 4 and accompanying text. Since the evidence presented by Alden tended to show only that he was emotionally distressed at the time of his escape attempt, the trial court acted properly in refusing to instruct the jury on the issue of Alden's sanity. This refusal was particularly appropriate since the district court did instruct the jury on the possibility that Alden's mental condition might have prevented him from forming the intent to escape required for conviction. Because Alden introduced some apparently credible evidence with regard to his overall mental state at the time of the escape attempt, this instruction was supported by the evidence adduced at trial; the insanity instruction requested by Alden was not.

The defendants' convictions are affirmed.

**7.** The requested instruction was worded as follows:

The sanity of defendant at the time of the offense charged is an issue. This means that, in addition to proving beyond a reasonable doubt the elements of the offense charged, the government must also prove beyond a reasonable doubt either that at the time of the offense charged the defendant did not have a mental disease or defect, or that despite the mental disease or defect he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform to the requirements of the law.

This instruction was authorized by this court in *United States v. Sennett*, 505 F.2d 774, 778 (7th Cir.1974).