**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodolfo BERRIO, a/k/a "Tito",**
**Defendant–Appellant.**

No. 95–2286.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1995.

Decided Feb. 29, 1996.

Barry Rand Elden, Chief of Appeals, Jay Fenton (argued), Office of United States Attorney, Criminal Appellate Division, Chicago, IL, for U.S.

John M. Cutrone, James J. Cutrone (argued), Chicago, IL, for Rodolfo Berrio.

Before POSNER, Chief Judge, and WOOD, Jr. and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Rodolfo Berrio, who called himself "Tito," received a telephone number for a pager on November 28, 1994. We don't know exactly how he received the number, but it must have come, directly or indirectly, from someone involved in the drug business in Colombia, South America. Berrio received the number because he previously agreed to assist individuals in transferring money to Colombia from Chicago.

Shortly after receiving the number, Berrio called the pager and eventually reached Louis Dominguez. Berrio said he had money to deliver to Dominguez, and they agreed to meet. They got together on December 1, and Berrio gave Dominguez $719,664. The cash was in singles, fins, sawbucks, and twenties. We asked the lawyers at oral argument to tell us what a stack this size looks like, but they didn't know.

Berrio and Dominguez met three more times, on December 9, 12, and 15. On the 9th Berrio turned over $408,000, on the 12th Dominguez received $531,000, and on the 15th the transfer totaled $355,000. But then the jig was up. Dominguez was a DEA agent working undercover in an investigation known as Operation Dinero. He arrested Berrio for money laundering, an apt charge considering that the cash was usually transferred in detergent boxes that had been emptied, filled with bills, and resealed.

The four Berrio/Dominguez meetings usually went down the same way. The two would meet at a prearranged location. The money would be packaged in laundry detergent boxes (one time it was wrapped like a Christmas gift) and left in the trunk of Berrio's car. Agent Dominguez would then take Berrio's car, ostensibly to deliver the money to someone else, and the two would meet later and switch cars. When Berrio was arrested on December 15 (the delivery to Agent Dominguez was earlier that day) his car was searched, and an additional $131,000

in cash was discovered inside emptied boxes of laundry detergent in the trunk.

Money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) is committed by a person who

(a)(1) ... knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... (B) knowing that the transaction is designed in whole or in part ... (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

Berrio pled guilty to the money laundering charge, reserving the right to challenge at sentencing the prosecution's contention that he knew or believed the funds he gave Agent Dominguez were drug proceeds. It is important here to note what Berrio did not contest. He did not challenge the government's assertion that the funds were in fact derived from the cocaine trade. The terms of his plea agreement expressly admitted that the government's evidence would prove that fact. The agreement, however, reserved the right to challenge the allegation that Berrio "knew or believed" the money was drug-related. Berrio also reserved the right to challenge the inclusion of the $131,000 found in his trunk in the total amount he was responsible for laundering.

At sentencing, the district court included the $131,000, calculating the total amount of money laundered by Berrio at just over $2 million. This calculation resulted in a six-point increase in his base offense level. The court rejected Berrio's claim that he was unaware that the cash given to Dominguez was drug proceeds, and found that Berrio believed, correctly, that the money came from drugs. Accordingly, a three-level enhancement was applied to his offense level under sentencing guideline 2S1.1(b)(1). After all enhancements and reductions were taken into account, the guideline calculation for Berrio produced a sentencing range of 51 to 63 months. He received the lowest sentence in that range.

Berrio raises three issues on appeal. First, he argues that the district court erred in its interpretation of guideline 2S1.1(b)(1). The court found that the enhancement would apply if Berrio knew or believed the laundered money to be drug proceeds. Berrio argues that belief is a much broader requirement than knowledge, and that the enhancement should apply only if he in fact knew that the money came from illegal drug activity. Berrio also claims that the district court's determination that he knew or believed the money to be drug proceeds was not supported by the evidence. Last, he argues that the district court erred in finding that the additional $131,000 was part of the money laundering scheme.

United States Sentencing Guideline 2S1.1(b)(1) instructs the sentencing judge to increase a defendant's base offense level by three "[i]f the defendant knew or believed that the funds were the proceeds of an unlawful activity involving manufacture, importation, or distribution of narcotics or other controlled substances." The district court found that Berrio believed the laundered money came from drug-related activity and so the three-level escalator to Berrio's base offense level was ordered. Applying the plain language of the guideline, the district court did not address the issue raised by Berrio regarding the mental state required to trigger the enhancement. In doing so, the district court implicitly held that belief alone satisfies the guideline's mental state requirement. Berrio argues that that interpretation is wrong. The district court's interpretation of the sentencing guidelines is a matter of law, subject to *de novo* review. *United States v. Tai*, 41 F.3d 1170, 1174 (7th Cir. 1994).

Berrio argues that the correct interpretation of the guideline would require him to have actual knowledge that the money he attempted to launder through Dominguez was the product of unlawful, drug-related activity. In support of this argument, he relies on the legislative history of the money laundering statute and guideline 2S1.1(b)(1). As originally enacted, the money laundering statute required that a defendant must have

"known" the laundered money was the product of unlawful activity. This knowledge requirement became the source of some disagreement when applied to government sting operations. Some courts held that it was impossible to "know" that funds were illegally derived if they were not in fact unlawful, but rather government-supplied sting funds. Other courts rejected this impossibility argument and held that what mattered for purposes of the knowledge requirement was the defendant's subjective mental state; a defendant's (mistaken) belief that the sting money was unlawfully procured could be equated with knowledge.

The statute was amended to eliminate the impossibility defense, and subsection (a)(3) of 18 U.S.C. § 1956 was added to include sting operations within the scope of the statute. Subsection (a)(3) criminalizes the laundering of money represented to be the proceeds of unlawful activity by law enforcement officers or those acting under their direction. The corresponding sentencing guideline, 2S1.1(b)(1), was amended in 1991. The only change from the original language of the guideline was the replacement of the word "knew" with the phrase "knew or believed."

The core of Berrio's argument is that the words "or believed" in the amended guideline were intended to apply only to convictions under 1956(a)(3), while 1956(a)(1) convictions like his may only be enhanced if the defendant's state of mind was one of actual knowledge. This is an interesting argument, but not a persuasive one. Berrio is essentially asking us to assume that the drafters of the amendment intended different words within the same sentence to apply to different subsections of the statute, yet somehow failed to incorporate that intent into the wording or structure of the guideline itself. Given the plain language of the guideline, we are unwilling to make that assumption.

■ While Berrio vigorously refutes the argument in favor of a plain language reading of the guidelines, he does not contest that he knew the funds were derived from unlawful activity. Indeed, by pleading guilty to the money laundering charge, he explicitly acknowledged that they were. He also admitted that the funds were in fact drug-related. He reserved only the right to contest whether he knew or believed the activity that generated the funds involved illegal drugs, and whether belief is a permissible state of mind upon which to base the enhancement.

The language of the statute requires Berrio to have actual knowledge that the funds were unlawfully derived. Berrio admits to such knowledge. The guideline, on the other hand, requires knowledge or belief that the money was the product of unlawful drug activity. The district court found that Berrio had such a belief. Berrio challenges the sufficiency of the evidence upon which the district court made this finding.

■ Facts upon which sentencing determinations are based must be proved by a preponderance of the evidence, *United States v. Saulter,* 60 F.3d 270, 278 (7th Cir.1991), and a district court's findings of fact under the sentencing guidelines are reviewed for clear error, *United States v. Briscoe,* 65 F.3d 576, 589 (7th Cir.1995). In this case, the district court had before it Berrio's admission in his plea agreement that the evidence would show the money to be drug proceeds. It heard evidence that Berrio knew the money was mostly in small bills counted and sorted by denomination, knew the amount of each delivery, and knew the money was destined for Cali, Colombia. The court also considered the fact that Agent Dominguez had repeatedly asked Berrio to supply him with cocaine, and that, while Berrio never in fact provided cocaine, he did at least hint that he could put the agent in touch with someone who could do so. We cannot say it was clear error for the district court to find that Berrio believed the funds in question were drug proceeds.

Furthermore, the evidence, though circumstantial, strongly suggests that Berrio had actual knowledge that the money came from drug dealing rather than some other unlawful activity. The beeper calls, the arranged meetings, the cash in small denominations, the wrappings, and the destination being the cocaine capitol of the world all emit the aroma of drug dealing. One would have had to be born yesterday—and Judge Lindberg in

the district court wasn't—to not see what was going on here.

■ The final issue raised is whether the six-point enhancement for laundering over $2 million was supported by the evidence. Berrio argues that the district court erred in including the money found in his car at the time of his arrest as part of the money laundering scheme. While that stash was not a substantial portion of the total, it was just enough to bump his base offense level up an extra notch. Sentencing guideline 2S1.1(b)(2)(F) provides a five-point enhancement for laundering over $1 million, while guideline 2S1.1(b)(2)(G) provides a six-point enhancement for laundering over $2 million. Including the money found in Berrio's car at the time of his arrest brought the total amount included in the money laundering scheme to $2,015,400. Exclusion of that trunk money would bring Berrio just under the $2 million mark, triggering only a five-point enhancement.

The district court made a factual determination that the $131,000 was part of the money laundering scheme. This finding is reviewed for clear error. *Briscoe*, 65 F.3d at 589. In reviewing this determination, we look to the entire body of evidence the district court had before it at sentencing. Looking just to the uncontested facts, we see that Berrio and Agent Dominguez had an ongoing relationship, that the $131,000 in question was packaged in the same way as previous deliveries, and that it was in the same place, the trunk, as it was during other deliveries. There was also some evidence that Berrio and Dominguez may have been getting together later that same day. It would be grossly ill-advised, on this record, to say that the district court clearly erred in concluding that the $131,000 was part of the res.

For these reasons, the sentence imposed by the district is AFFIRMED.