In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2409

United States of America,

Plaintiff-Appellee,

v.

Lawrence Cravens,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 1068--Suzanne B. Conlon, Judge.

Argued November 9, 2001--Decided December 27, 2001

   Before Manion, Kanne, and Rovner, Circuit
Judges.

   Manion, Circuit Judge.

I.

   In the 1930's and 40's, the notorious
bank robber Willie Sutton, when asked why
he robbed banks, simply replied, "Because
that's where the money is."/1
Apparently Law-rence Cravens endorses
this philosophy. While no Willie Sutton,
Cravens does seem to crave robbing banks.
In the indictment giving rise to the
present appeal, Cravens was charged with
four counts of bank robbery in violation
of 18 U.S.C. sec. 2113(a), arising out of
four separate bank robberies during the
period of November 2000 to January 2001.
In addition to these bank robberies,
Cravens confessed to an additional four
bank robberies for which he was not
charged. Cravens also has six prior bank
robbery convictions.

   On March 1, 2001, Cravens pleaded guilty
to the most recent robberies charged in
Counts One, Two and Three. The district
court sentenced him to 169 months'
imprisonment, 3 years of supervised
release, a fine of $2,000 and a special
assessment of $300. At the conclusion of
the sentencing hearing, on the
government's motion, the court dismissed

Count Four of the indictment.

The subject of the present appeal is the length of Cravens' prison sentence. Prior to sentencing, his court-appointed attorney filed a motion for authorization to obtain expert services pursuant to 18 U.S.C. sec. 3006A(e)(1). Cravens sought the appointment of an expert to assist him in preparing a motion for downward departure based upon diminished mental capacity./2 In a minute order, the district court denied the motion, finding that "even if defendant establishes he suffers from diminished capacity, it appears from the face of the motion and defendant's admission during his guilty plea that a downward departure is prohibited under 5K2.13(1), (2) and (3)." Cravens then filed a motion for reconsideration, with more medical evidence, and also filed a motion for downward departure. At his sentencing hearing, the court heard oral argument from both sides and then denied both motions. Cravens appeals, and we affirm.

II.

Cravens appeals the denial of his request for authorization to obtain a psychiatric evaluation for purposes of supporting his downward departure motion. We review this decision for an abuse of discretion. See United States v. Daniels, 64 F.3d 311, 315 (7th Cir. 1995). Pursuant to 18 U.S.C. sec. 3006A(e)(1), "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them . . . . Upon finding, after appropriate inquiry . . ., that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel toobtain the services." There is no dispute that Cravens is financially unable to obtain the expert services, and therefore the sole issue is whether such services are "necessary."/3

The test commonly used to determine whether expert psychiatric services are "necessary" is the "private attorney" standard which requires the authorization of such services when defense counsel "makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having

the independent financial means to pay for them." United States v. Alden, 767 F.2d 314, 318-19 (7th Cir. 1984). The Alden court also placed further limitations on the authorization of services based on the circumstances of that case. In Alden, the defendants were caught red-handed and, thus, their only conceivable defense was one based on insanity. This court noted that "to require the government to pay for psychiatric services in this type of case just because a reasonable private attorney would do so might be to require the government to subsidize a 'fishing expedition' which is not the purpose of section 3006A(e)." Id. at 318. Accordingly, we held that it was appropriate for the district court to "satisfy itself that a defendant may have a plausible defense before granting the defendant's section 3006A(e) motion . . . ." Id. at 318-19. We find that this limited test is also appropriate in the case before us. Obviously it follows that if Cravens is not legally entitled to a downward departure even if he suffers from a diminished mental capacity, expert testimony to establish the proof of a mental defect would merely be a "fishing expedition" and is not required for Cravens' defense. See Daniels, 64 F.3d at 315.

   In analyzing whether Cravens had a plausible argument for a downward departure, the district court held that even if he established, through an expert, that he suffers from diminished capacity, a downward departure is prohibited under Section 5K2.13. This section of the Sentencing Guidelines provides that a "sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. sec. 5K2.13. However, Section 5K2.13 further provides that the court may not depart downward if any one of three factors exists: "(1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicates a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) defendant's criminal history indicates a need to incarcerate the

defendant to protect the public." Id. Here, the district court determined that not just one, but all three of these factors applied and therefore found the issue of whether an expert should be appointed merely academic. The court concluded that even if Cravens was mentally diminished at the time he committed his crimes, he was not eligible for a downward departure. Cf. Osoba, 213 F.3d at 916-17 (denial of authorization to obtain an expert to support downward departure motion was proper where the circumstances of defendant's theory of diminished incapacity would not have supported a departure, even if true).

Cravens argues that it was improper for the district court to analyze any of the three limiting factors under Section 5K2.13 in the absence of a recent expert mental health evaluation. Whether expert testimony is needed to establish the exceptions contained under Section 5K2.13 is a question of law that we review de novo. See United States v. Berrio, 77 F.3d 206, 208 (7th Cir. 1996). Turning to the first of the three factors, Cravens is arguably correct that determining whether "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants" requires consideration of an expert medical opinion. Although a lay person may readily observe a drug or alcohol problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision. Cf. United States v. Brown, 32 F.3d 236, 240 (7th Cir. 1994) (noting that under the Legal Insanity Defense Reform Act, "[i]t is the province of the jury to determine whether the defendant has carried his burden of proving his legal insanity, but the psychiatrist's opinion regarding the defendant's mental status in the psychiatric or psychological sense is quite useful, even critical, to the jury's deliberation" and is thus properly admissible under Fed. R. Evid. 704(b).). However, we need not conclusively decide that question here because the existence of any one of the three factors set forth under Section 5K2.13 precludes a downward departure on Cravens' sentence and we find that no expert testimony is needed for a court to analyze the second and third factors of Section 5K2.13. As noted

above, the second factor prevents departure where "the facts and circumstances of the defendant's offense indicates a need to protect the public because the offense involved actual violence or a serious threat of violence" and the third factor considers whether the "defendant's criminal history indicates a need to incarcerate the defendant to protect the public." Neither factor, by its plain language, refers to nor depends upon the defendant's mental health condition. Accordingly, expert testimony to establish a diminished mental capacity is unnecessary for a district court to analyze either one and we conclude that the district court did not abuse its discretion in denying Cravens' motion for an expert to evaluate his mental health condition.

At this point, we note that, because we find the district court correctly applied Section 5K2.13(2) and (3), we lack jurisdiction to review the underlying merits of Cravens' downward departure motion. Generally a decision not to award an adjustment under Section 5K2.13 falls within the court's unreviewable discretion unless it "yields a sentence 'imposed as a result of an incorrect application of the sentencing guidelines . . . .'" United States v. Crucean, 241 F.3d 895, 899 (7th Cir. 2001) (citation omitted). According to Crucean, "the mental capacity adjustment provided by sec. 5K2.13 is one committed entirely to the discretion of the district court. . . . Even if the judge finds that the defendant committed the offense while afflicted by a significantly reduced mental capacity, he is not required to reduce the defendant's sentence; he is merely authorized to do so, and his exercise of that authority is unreviewable." Id. (citation omitted). Nevertheless, we briefly review the district court's reasoning to support its conclusion that Cravens would not qualify for a reduction under Section 5K2.13(2) and (3).

First, under Section 5K2.13(2), the district court concluded that Cravens' offenses involved a serious threat of violence. On Count One, the government would have introduced evidence that Cravens approached a teller at Old Kent Bank in Chicago, Illinois and handed her a demand note which stated "give me all

your 50 and 100 now." The teller then gave him $3,750 and, as Cravens exited the bank, she yelled to the security guard to stop him. The security guard then stopped Cravens during his flight from the bank. On Count Two, the government would have introduced evidence that Cravens entered the LaSalle Bank in Chicago, Illinois, approached a teller and inquired about opening a bank account. After some discussion, Cravens held up the same demand note that he used to rob Old Kent Bank. The teller then walked away and Cravens exited the bank without completing the robbery. With respect to Count Three, according to the affidavit of FBI Special Agent Timothy Keese, the investigating officer, Cravens approached the teller at the Manufacturers Bank in Lansing, Illinois, and passed her a demand note which read "give me your 100s and 50s now." He also said, "don't be stupid," and, placing his hands in his pockets, stared directly at her. The teller believed that Cravens was reaching for a gun. However, when the teller showed Cravens her empty drawer, Cravens took the note back and left the bank. At the sentencing hearing, Cravens informed the judge that he did not remember placing his hand in his pocket and telling the teller "don't be stupid." Under these circumstances, the district court concluded that there was a serious threat of violence. Even if Cravens was unarmed and never actually caused any physical violence, it concluded that the facts and circumstances indicated that he used intimidation and some threatening behavior to accomplish his crimes.

Next, under Section 5K2.13(3), the district court concluded that Cravens' extensive criminal history (at least thirteen bank robberies) indicated a need to incarcerate him to protect the public. Cravens argued that, in light of his mental health history, there is no need to incarcerate him in order to protect the public./4 As we noted, however, this determination is one properly made irrespective of the defendant's mental health condition.

Accordingly, the district court concluded that Cravens could not qualify for a reduction under Section 5K2.13 and therefore he did not have a plausible basis for obtaining an expert witness to assist him in that motion. Were we able

to review the merits of the district court's downward departure decision, we would likely find that it had not abused its discretion. Nevertheless, we limit our holding to the issue properly before us on appeal and conclude that the district court was not required to consider expert testimony in its analysis of the second and third factors of Section 5K2.13 and therefore did not abuse its discretion in denying Cravens' motion for the appointment of an expert./5

III.

   For the reasons stated herein, we conclude that the district court did not abuse its discretion in denying Cravens' motion for the appointment of an expert and AFFIRM the sentence imposed by the district court.

FOOTNOTES

/1 See http://www.fbi.gov/fbinbrief/historic/ famcases/sutton/ sutton.htm.

/2 Cravens apparently suffers from serious drug and alcohol addiction problems and he may also suffer from mental illness. In February 1985, after threatening to commit suicide, Cravens was admitted to Charter Barclay Hospital where he was diagnosed as suffering from "dysthymic disorder" (a depression disorder) and cocaine abuse. Additionally, he was admitted to mental health facilities in August 1997 and again in September 2000.

/3 The government does not question whether Section 3006A(e)(1) applies to the sentencing phase of a trial, as well as to the guilt phase. Because the parties do not raise it, we assume, without deciding, that it does. See United States v. Osoba, 213 F.3d 913, 915 (6th Cir. 2000) (collecting cases where circuits assume without discussion that Section 3006A(e)(1) applies to sentencing).

/4 We note that Cravens did not request a hearing under 18 U.S.C. sec. 4244(a) to determine if hospitalization was necessary in lieu of incarceration due to the fact that he may be suffering from a mental disease or defect.

/5 In support of his argument that he had a plausible argument for a downward departure, Cravens also points to the extensive analysis engaged in by a district court in the Northern District of Illinois in United States v. McFadzean, 1999 WL 1144909 (N.D. Ill.). We note that since district

court decisions are not authoritative in this or any other court of appeals, we need not even try to distinguish this case. See Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410, 413 (7th Cir. 1994). Nevertheless, we do not find it to be particularly helpful to Cravens' argument. The thorough analysis engaged in by thedistrict court in McFadzean does not persuade us that Cravens had a plausible defense requiring the appointment of an expert. In McFadzean, the district court concluded that the defendant indeed suffered from a mental health problem at the time he committed his crime. Nevertheless, the court denied his motion for a downward departure, concluding that his criminal history indicated a need for incarceration. The court's determination was made irrespective of the defendant's mental health condition and, therefore, regardless of the thoroughness of the court's analysis, the decision does not support Cravens' argument.