**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bennie DAVIS, Defendant–Appellant.**

**No. 03–1156.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 2003.

Decided Oct. 8, 2003.

Before POSNER, MANION, and EVANS, Circuit Judges.

ORDER

Bennie Davis was convicted of possession of five or more grams of cocaine base ("crack") with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). He appeals his conviction, arguing that the government improperly asked questions on cross-examination that implied facts for which the government was without a good faith basis for believing to be true; that the government improperly bolstered a witness' credibility; and that the court erred in denying his untimely motion for the appointment of a forensic expert. We affirm.

I.

Davis and his half-brother, Anthony Cistrunk, were in the drug business. As part of a 2000 DEA investigation, the government obtained a court order to intercept phone calls made to and from Cistrunk's cell phone. Three intercepted phone calls involved drug-related conversations between Davis and Cistrunk. Based on these calls, officers obtained a search warrant for Davis' residence which they executed on October 26, 2000. During the search of Davis' residence, officers recovered crack cocaine, $6,000 in cash, guns, and ammunition.

Following Davis' indictment and appointment of counsel on November 14, 2001, the government made the recorded phone calls available for Davis' review. The government informed Davis of its contention that the tapes contained the voices of Davis and Cistrunk and that at trial Cistrunk would identify Davis' voice on the tapes.

In February 2002, Davis filed two motions to extend the deadline for filing pretrial motions and to continue the trial date. The court granted these two motions and established a new pretrial motion deadline of April 1, 2002, and a new trial date. On March 22, 2002, for the first time, Davis' attorney sent a letter to the Assistant

United States Attorney stating that Davis did not believe the tapes contained his voice, and requesting that the government conduct a voice analysis of the tapes. The government refused to conduct a voice analysis. Davis then waited for over two months before filing a motion on June 20, 2002, for the court to appoint an expert to conduct the voice analysis. Davis' motion requested the appointment of an out-of-state expert at a cost to the government of up to $15,000. The court denied Davis' motion as untimely, and, in the alternative, as too costly, considering that Davis made no showing that he had attempted to procure an expert closer in geographical proximity to the court.

Trial then proceeded. Cistrunk testified that he was involved with Davis in the cocaine business, and he identified Davis' voice on the tapes. The taped conversations confirmed Cinstunk's testimony as to Davis' role in the charged drug offenses. In his opening statement, Davis' attorney attacked Cistrunk's credibility by calling him "the bought witness of the prosecution," referring to Cistrunk's cooperation agreement with the government. Davis' attorney also focused on the cooperation agreement during Cistrunk's cross-examination. In response, the government called DEA Special Agent Glenn Haas who testified that Cistrunk had previously cooperated in an unrelated case against George Williams. Haas testified that Cistrunk provided information concerning Williams, that the two were recorded on tapes introduced during Williams' trial, and that Williams ultimately pleaded guilty. The court instructed the jury that Haas' testimony was admitted solely on the question of Cistrunk's credibility, and that William's guilty plea was not evidence against Davis.

The final trial issue relevant to this appeal involves the government's cross-examination of Davis and defense witness Stacy Ware. On cross-examination of both Davis and Ware, the government inquired into several alleged acts of untruthfulness, including whether the witnesses provided false names and false dates of birth to law enforcement officers. The witnesses responded in the negative. Davis' attorney failed to object or otherwise challenge the government's good faith basis for the cross-examination questions.

On August 1, 2002, a jury found Davis guilty of possessing five or more grams of crack cocaine with the intent to distribute. On January 15, 2003, the court sentenced Davis to 360 months' imprisonment, five years of supervised release, and a $100 special assessment. Davis filed a timely notice of appeal on January 15, 2003.

## II.

### A. Cross Examination of Davis and Ware

Davis first argues that during his cross-examination and the cross-examination of defense witness Ware, the prosecutor asked questions that implied facts for which the prosecutor was without a good faith basis for believing to be true. Specifically, the prosecutor asked Davis and Ware whether they had previously provided false names and false dates of birth to law enforcement officers. Both witnesses responded in the negative.

The scope of cross-examination regarding the credibility of a witness is within the sound discretion of the trial court and when a defendant fails to object to the cross-examination at trial, this court reviews such questioning only for plain error. *United States v. Jungles*, 903 F.2d 468, 478 (7th Cir.1990). Pursuant to plain error review, reversal is appropriate only to avoid a miscarriage of justice. *United States v. Doyle*, 121 F.3d 1078, 1089 (7th Cir.1997).

Rule 608(b) of the Federal Rules of Evidence provides that specific instances of conduct of a witness may be inquired into

on cross-examination if such instances are probative of the witness' character for untruthfulness. Additionally, it is well established that a cross-examiner must have a good faith basis to ask a question. *See, e.g., United States v. Adames,* 56 F.3d 737, 745 (7th Cir.1995); *Jungles,* 903 F.2d at 478. However, "the government does not have a duty in every case to introduce the factual predicate for a potentially prejudicial question posed on cross-examination, particularly in situations ... where there is a reasonable suspicion that the circumstances underlying the question might be true." *Jungles,* 903 F.2d at 478. "This exception to the general rule receives even more play where there is no contemporaneous objection to the cross-examination." *Id.* (citation omitted).

█ Here, Davis admits that he failed to object to the challenged cross-examination questions at trial. There is no evidence in the record that the government was lacking a good faith basis for asking the questions, and without an objection or request by the court, the government was under no obligation to reveal the bases for the questions. To the contrary, this court "will not ordinarily impute bad faith to a party's failure to volunteer its factual basis." *United States v. Martel,* 792 F.2d 630, 636 (7th Cir.1986); *United States v. Harris,* 542 F.2d 1283, 1308 (7th Cir.1976) (refusing to impute bad faith to the government's failure to volunteer its factual basis for cross-examination questions). Accordingly, there is no plain error on the part of the trial court in allowing the cross-examination questions concerning prior false statements.

**B. Evidence Rehabilitating Cistrunk's Credibility**

Davis next challenges testimony elicited from DEA Special Agent Haas, called by the government to testify that Cistrunk had previously cooperated in an unrelated case against George Williams. Haas testified that Cistrunk provided information on Williams, that the two were recorded on tapes introduced during Williams' trial, and that Williams ultimately pleaded guilty.

This court reviews the district court's admission of evidence for an abuse of discretion. *United States v. Scott,* 267 F.3d 729, 734 (7th Cir.2001). It is well settled that when a witness' credibility has been attacked, the non-attacking party may introduce evidence to "rehabilitate" the witness. *United States v. Lindemann,* 85 F.3d 1232, 1242–43 (7th Cir.1996); *Scott,* 267 F.3d at 735–37. In the context of a cooperating witness alleged to be biased in favor of the government, extrinsic evidence of the witness' successful cooperation in other cases can be admitted as probative of the witness' credibility. *See Scott,* 267 F.3d at 735–37; *Lindemann,* 85 F.3d at 1242–43. This "other case" evidence may be viewed by a jury as rebutting assertions of bias because it reflects that the witness had "multiple bargaining chips" and is therefore "less likely to be lying in this particular case out of self-interest." *Scott,* 267 F.3d at 736–37; *Lindemann,* 85 F.3d at 1243.

█ In this case, Davis' attorney attacked Cistrunk's credibility in his opening statement and again in cross-examination, by focusing on Cistrunk's cooperation agreement with the government. Accordingly, Haas' testimony concerning Cistrunk's "multiple bargaining chips" properly served as rehabilitation evidence pertaining to Cistrunk's credibility. This is especially true because the district court instructed the jury that this rehabilitative evidence was admitted solely on the question of Cistrunk's credibility, and this diminished the chance that the evidence resulted in unfair prejudice to Davis. *See Scott,* 267 F.3d at 736. Thus, pursuant

to *Scott* and *Lindemann,* the district court did not abuse its discretion in allowing the government to call Haas to convey Cistrunk's previous cooperation with the government in another trial.

## C. Davis' Untimely Motion for the Appointment of a Forensic Expert

Davis' final appellate argument is that the district court erred in denying his untimely motion for the appointment of an expert to perform a voice analysis of the government's tapes of wire-tapped phone conversations.

The decision to deny or grant a request to appoint an expert for an indigent defendant under 18 U.S.C. § 3006A(e)(1) is reviewed for abuse of discretion. *See, e.g., United States v. Cravens,* 275 F.3d 637, 639 (7th Cir.2001). Pursuant to 18 U.S.C. § 3006A(e)(1), "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them. . . . Upon finding, after appropriate inquiry . . ., that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services." There is no dispute that Davis is financially unable to obtain the requested expert services, and therefore the question is whether such services are "necessary." As a prerequisite to determining whether the appointment of an expert is necessary under 18 U.S.C. § 3006A(e), defense counsel has the obligation to make a "timely" request. *Cravens,* 275 F.3d at 639 (quoting *United States v. Alden,* 767 F.2d 314, 318–19 (7th Cir.1984)).

Here, the record is clear that Davis' attorney knew about the tapes and the government's intended use of the tapes as early as November 14, 2001. Despite filing a motion to extend the pre-trial motion deadline which the court granted, Davis' attorney failed to file a motion for the court to appoint an expert until several weeks after the already extended pre-trial motion deadline expired. Davis' contention that he expected that the government would agree to a voice analysis or respond to his informal request sooner is irrelevant, considering that there was no motion to compel filed and the court was not asked to appoint an expert until well after the pretrial motion deadline.

Davis' failure to request the appointment of an expert in a timely fashion means that the district court's decision to deny the request is not an abuse of discretion: It is well settled that a district court has the inherent authority to enforce a scheduling order to maintain the efficiency of its docket. *Cf. Thomas v. Arn,* 474 U.S. 140, 146, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The motion was clearly untimely and Davis' attorney has not offered a basis for a finding of excusable neglect regarding the inordinate delay.

Moreover, even if Davis' motion had been timely or if there were a basis for excusable neglect, the motion was nevertheless properly denied as unreasonable. As the district court found, the motion requested fees in an amount of up to $15,000 for the court to appoint an expert from Wisconsin. The motion failed to indicate whether efforts had been made to secure a witness closer to Springfield, Illinois, the trial venue, at a lower cost. A proper consideration for a court in deciding whether to appoint an expert under 18 U.S.C. § 3006A(e) is whether the motion is made "in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *Cravens,* 275 F.3d at 639 (quoting *United States v. Alden,* 767 F.2d 314, 318–319 (7th Cir.1984)). Certainly, economic considerations are relevant to a reasonable attorney procuring expert services for a client with the financial ability to pay for those services. Due

to the fact that the motion by Davis' attorney failed to indicate whether any effort was made to locate a comparable forensic expert in the local area at a reduced cost, the motion was unreasonable under the standard set forth in *Cravens*.

## III.

The district court did not commit plain error in permitting Davis and Ware to be cross-examined on specific instances of misconduct. In addition, the district court did not abuse its discretion in permitting the government to offer evidence to rehabilitate Cistrunk's credibility. Finally, the district court did not abuse its discretion in denying Davis' untimely motion for the appointment of an expert. For these and the foregoing reasons, we AFFIRM.