In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3654

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

COURTENAY ANDERSON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 87—**Samuel Der-Yeghiayan**, *Judge*.

ARGUED SEPTEMBER 11, 2008—DECIDED NOVEMBER 5, 2008

Before EASTERBROOK, *Chief Judge*, and POSNER and
EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty
to committing a bank robbery in 2007. Before sentencing,
he moved under 18 U.S.C. § 3006A for the appointment of
a mental health expert to evaluate him for diminished
mental capacity. The district judge denied the motion. The
defendant asks us to vacate the sentence and direct the
district judge to appoint a mental health expert and
upon receiving the report to resentence the defendant.

Section 5K2.13 of the federal sentencing guidelines provides that a sentence below the applicable guideline range "may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity . . . . If a departure is warranted . . . the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." An Application Note states that "'significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." But section 5K2.13 provides that it is inapplicable if the offense involved "a serious threat of violence," and that is the case here. The defendant presented a note to a bank teller stating "as you can see I have a gun," demanding money in stacks of $100, $50, and $20 bills, and threatening the teller with death if she didn't comply. Although we are not told whether he actually had a gun, he threatened to kill a person and that was enough to disentitle him to a sentencing discount under the guideline. *United States v. Cravens*, 275 F.3d 637, 640-41 (7th Cir. 2001).

But now that the sentencing guidelines are merely advisory, a judge can give a sentencing discount to a bank robber pursuant to 18 U.S.C. § 3553(a) on account of diminished capacity, without regard to the limitations in guideline section 5K2.13, because diminished capacity might affect "the nature and circumstances of the offense and the history and characteristics of the defendant," and

those are among the statutory factors that guide sentencing. *Id.*, § 3553(a)(1).

The motion to appoint a mental health expert to evaluate the defendant's mental capacity stated that the defendant was HIV-positive and suffered from severe depression, but did not indicate whether those conditions had existed at the time of the offense or what symptoms produced by them might have made him more likely to rob a bank. *United States v. Dyer*, 216 F.3d 568, 570-71 (7th Cir. 2000) ("if [the defendant's] mental condition was not a but-for cause of his crime, that is, if he would have committed the crime even if he had been completely sane at all times, then it is hard to see how his mental condition is any more relevant to his punishment than the color of his hair . . . . If there is no connection between the defendant's mental condition and his crime, there is no basis for a punishment discount"). But although the district judge rightly denied the motion he said that "I will allow you to present the information that you state that he suffers from depression and he had HIV. I will consider those as factors when I consider the 18 U.S.C. 3553 factors."

The defendant filed a motion to reconsider that amplified the original motion by asserting that he had been both HIV-positive and severely depressed at the time of the offense and adding that there is a condition known as "HIV-associated dementia" (HAD) that impairs memory, speech, concentration, motor functioning, and emotional control. But the motion contains no indication that the defendant was suffering from any

of these impairments when he robbed the bank. The judge denied that motion too, but repeated that he would consider at sentencing the defendant's medical condition.

The defendant submitted a sentencing memorandum, repeating the argument about his mental condition and adding that he was taking Prozac for his depression and Resterol to help him sleep (odd: Resterol is a food supplement designed to lower cholesterol) and was undergoing monthly therapy sessions with a psychiatrist. The memorandum suggested in passing that since the defendant's HIV infection reduced his life expectancy a shorter sentence might be appropriate; but this suggestion was unrelated to the request for the appointment of a mental-health expert.

At the sentencing hearing the defendant's lawyer recommended that his client (who was being sentenced as a career offender) be given a sentence of between 100 and 151 months. The government, which had neither supported nor opposed the motion for appointment of an expert, recommended that the sentence be within the guidelines range. The judge, after a noncommittal reference to the defendant's medical condition, sentenced him to 172 months, which was within the guidelines range of 151 to 188 months.

The government has made a limited confession of error, which of course is not binding on us. *Orloff v. Willoughby*, 345 U.S. 83, 87-88 (1953); *United States v. Demaree*, 459 F.3d 791, 793 (7th Cir. 2006); *Strauss v. United States*, 516 F.2d 980, 982 (7th Cir. 1975); *United States v. Sanchez-Berrios*, 424 F.3d 65, 81 (1st Cir. 2005). The government

believes that the district judge may have thought the defendant was seeking an evaluation either of his mental capacity to have pleaded guilty or of his capacity at the time of sentencing, rather than of his capacity at the time of the offense. The last is the relevant time when a sentencing discount is sought under section 5K2.13 of the guidelines, *United States v. Frazier*, 979 F.2d 1227, 1230 n. 2 (7th Cir. 1992); *United States v. Greenfield*, 244 F.3d 158, 162 (D.C. Cir. 2001), but the guideline was inapplicable and anyway by the time the sentencing hearing was conducted the defendant's lawyer had made clear that his argument for lenity presupposed that the defendant had had diminished capacity at the time of the offense.

The government points out that the district judge would not have been abusing his discretion had he ruled explicitly that the defendant's submission in support of his motion for the appointment of a mental health expert was insufficient to warrant appointing an expert. We would put the point more strongly: it would have been an abuse of discretion had the judge granted the motion on so skimpy a showing as the defendant made. The appointment of an expert is an expense to the government (according to the defendant's motion to reconsider, the cost would have been between $5,000 and $7,500), a burden to the court (which must evaluate the expert's evaluation), and a source of delay in sentencing. See, e.g., *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315-16 (11th Cir. 2000); *Town of Burlington v. Department of Education*, 736 F.2d 773, 791 (1st Cir. 1984); *Shipes v. Trinity Industries, Inc.*, 685 F. Supp. 612, 616 (E.D. Tex. 1987); Edward K. Cheng, "Independent Judicial Research

in the Daubert Age," 56 *Duke L.J.* 1263, 1271-72 (2007). It should not be done casually.

The defendant's submissions do not indicate that he has any mental or other symptoms as a result of being infected by the AIDS virus (HIV—human immunodeficiency virus). The record does not even indicate when he became infected. The sentencing memorandum asserts without any backing from medical records that it was while he was imprisoned, apparently between 1986 and 1998, for murder. That would place the onset of the HIV infection between 9 and 21 years before the bank robbery, certainly long enough for symptoms of AIDS to appear. But the date of onset is unsubstantiated, and the defendant continues to describe himself as being HIV-positive rather than as a person with AIDS. He does not claim to have any symptoms other than depression, which could be a pre-AIDS consequence of HIV or could be unrelated.

HIV virus kills white blood cells, the core of a person's immune system. It can take many years, however, even without any treatment to retard the destructive march of the virus, for the erosion of the infected person's immune system to reach a point at which serious symptoms of ill health appear; only when they do appear, or the afflicted person's white blood cell count falls to the level at which grave symptoms are highly likely, is he classified as having AIDS rather than as being just infected by HIV. Centers for Disease Control and Prevention, "Living With HIV/AIDS," www.cdc.gov/hiv/resources/brochures/livingwithhiv.htm#q2 (visited Oct. 16,

2008); David W. Webber, *AIDS and the Law* § 1.09, pp. 1-47 to 1-48 (4th ed. 2008); Gordon Edlin & Eric Golanty, *Health and Wellness* 246-47 (2007); Mary-Jane Schneider, *Introduction to Public Health* 158-59 (2d ed. 2006); Brett Grodeck, *The First Year HIV: An Essential Guide for the Newly Diagnosed* 31-32 (2003).

There is no suggestion that at the time of the robbery the defendant had any symptoms (other than the impairment of his immune system to an unknown extent), such as dementia, of his being infected with HIV. There is no consensus on the prevalence of dementia in persons with AIDS. Estimates range from 5 percent (or even less) to 24 percent, Mary Ann Cohen & Jack M. Gorman, *Comprehensive Textbook of AIDS Psychiatry* 41 (2008); Steven H. Zarit & Judy M. Zarit, *Mental Disorders in Older Adults: Fundamentals of Assessment and Treatment* 67-68 (2d ed. 2007); Valery L. Feigin & Derrick A. Bennett, *Handbook of Clinical Neuroepidemiology* 361 (2007); Beau M. Ances & Ronald J. Ellis, "Dementia and Neurocognitive Disorders Due to HIV-1 Infection," 27 *Seminars in Neurology* 86 (2007), though the figure can be, as one would expect, higher in the very late stages of the disease. Donald H.J. Hermann & William P. Schurgin, *Legal Aspects of Aids* § 1:22, pp. 1-20 to 1-21 (2007). A complication is that modern treatments greatly reduce the likelihood of dementia in an AIDS patient, Ances & Ellis, *supra*, at 87 (fig. 1); Benoit Dubé et al., "Neuropsychiatric Manifestations of HIV Infection and AIDS," 1 *Journal of Psychiatry & Neuroscience* 237, 238 (2005), and we do not know what if any treatment the defendant has received. But we do know that at the time of the offense—and, as far as we know, to

this day—the defendant had only the virus, not AIDS symptoms.

Depression unlike dementia can be a symptom of being infected by HIV even before the disease progresses to AIDS. *Id*. at 240. And though the defendant does not argue that his depression is a symptom of his HIV infection, it is a common and sometimes a disabling mental disease, whatever its cause. But it cannot be *assumed* to diminish a person's ability to avoid committing crimes and thus be relevant to his sentence. See, e.g., *United States v. Gwiazdzinski*, 141 F.3d 784, 790-91 (7th Cir. 1998); *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992); *United States v. McCart*, 377 F.3d 874, 878 (8th Cir. 2004); *United States v. Greenfield*, 244 F.3d 158, 162-63 (D.C. Cir. 2001). All we are told is that the defendant is being treated for depression. Since he has been diagnosed with the condition and is being treated with a prescription drug (Prozac), there must be medical records. But his lawyer did not furnish any to the district court or to us and the presentence investigation report states that the probation office "has been unable to verify the defendant's [mental health] treatment information."

A judge is not required to appoint a mental health expert without a showing that the appointment would have some (not necessarily a great) likelihood of resulting in a reduced sentence. 18 U.S.C. § 3006A(e); *United States v. Fazzini*, 871 F.2d 635, 637 (7th Cir. 1989); *United States v. Alden*, 767 F.2d 314, 318-19 (7th Cir. 1984); *Branscomb v. Norris*, 47 F.3d 258, 262-63 (8th Cir. 1995); compare *Ake v. Oklahoma*, 470 U.S. 68, 86 (1985). That showing has not been made.

The defendant also asked the court to appoint an investigator "to check whether any records confirmed . . . that the murder victim in the 1984 case had taken in Mr. Anderson and his brother when they were still minors, and had sexually abused them. If this account were confirmed, it could be relevant to re-assessing Mr. Anderson's criminal history." The judge denied the defendant's request. Since, as the government asserts without contradiction, "it appears that the records defendant sought to obtain through the investigator were obtained by the Probation Officer . . . and presented to the district court for purposes of sentencing," the defendant's argument is frivolous.

AFFIRMED.