In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2878

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LEONARD ARON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 616—**John W. Darrah**, *Judge.*

ARGUED JANUARY 21, 2003—DECIDED MAY 13, 2003

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Leonard Aron pleaded guilty to one count of wire fraud, based on two separate, fraudulent transactions. The district court sentenced him to 60 months imprisonment. At sentencing, Aron moved for a downward departure, which the district court denied. Because the district court recognized that it had the legal authority to depart downward but found that the facts of Aron's case did not warrant a departure, we have no jurisdiction, and this appeal is dismissed.

## I. History

Underlying the wire-fraud charge in this case are two transactions involving fraudulent bonds distributed by Leonard Aron, a seventy-four-year-old man with four prior felony convictions dating back to the 1960s. The first transaction in this case commenced in 1996 when Aron traveled to Florida to visit Franco Nicoletti, a man he originally met while serving time at a federal prison in the mid-1980s. Nicoletti had been trying to obtain a loan of $8-9 million from Richard Rendina, a Florida attorney. Aron informed Nicoletti that he had access to counterfeit bonds that Nicoletti could use to secure the loan. The two made a deal whereby Aron sent $8.7 million in counterfeit bonds to Nicoletti in return for an up-front fee of 25% of the value of the loan.

During Nicoletti's subsequent efforts to obtain the loan, Rendina became suspicious of the bonds and contacted law enforcement. The authorities devised an operation to set up Nicoletti to tender the bonds to an undercover agent. The operation was successful, and Nicoletti was arrested and subsequently indicted on federal charges stemming from the delivery of counterfeit bonds. No charges were filed against Aron at that time.

The second transaction underlying Aron's wire fraud charge occurred in early 2000 when a Chicago entrepreneur put him in touch with an individual in Florida wishing to obtain capital for a business investment. In April 2000, Aron sold this individual $1.96 million in counterfeit bonds in two installments. A few days after the second installment, the individual discovered a problem with the bonds and went to the authorities to report his dealings with Aron.

Following an investigation, a federal grand jury indicted Aron on three counts—wire fraud, interstate transportation of a security taken by fraud, and uttering coun-

terfeit securities, in violation of 18 U.S.C. §§ 1343, 2314, & 513(a). Pursuant to a written plea agreement, Aron pleaded guilty to one count of wire fraud, and the other charges were dismissed.

At his sentencing hearing, Aron sought a three-level downward departure under USSG § 5K2.0, arguing that the $8.7 million portion of the intended loss (based on the 1996 transaction) would have been impossible to achieve because it involved a government sting operation. The government countered that Aron should not receive a downward departure on the basis of impossibility because this was not a classic sting operation where the intended loss is impossible because the undercover agents will never actually purchase the contraband. Rather, the government argued, given that these bonds were in existence and that Aron was engaged in an ongoing criminal scheme involving the bonds, the intended loss of $8.7 million was neither unrealistic nor impossible. In other words, had the authorities not entered the picture, Nicoletti and Aron most likely would have tendered the bonds to some other individual or institution willing to provide the loan.

The district court denied Aron's motion for a downward departure, providing two separate reasons for the denial. First, the court agreed with the government that the intended loss of $8.7 million was not impossible: "Given the totality of the facts and circumstances . . . I find that it is not unreasonable to conclude that intended loss of an additional eight million dollars was contemplated by the defendant and that a loss based on the additional eight million dollars is not impossible or fanciful." (S.Tr. at 21.) Second, the court stated that even "if the defendant were to be considered eligible for a downward departure because such an amount would be deemed . . . to be impossible . . . I find that based on the defendant's criminal history . . . that it would not be the appropriate exercise

of this court's discretion to grant such a downward departure." (*Id.*)

In this appeal, Aron argues that the district court erred in refusing to grant him the downward departure based on impossibility. He does not challenge, or even mention, the district court's alternative basis for not granting the departure—that even if Aron did qualify for a downward departure based on impossibility, the district court would not exercise its discretion to depart because of Aron's criminal history.

## II. Analysis

Appellate review of sentences is controlled by 18 U.S.C. § 3742. Section 3742(a) provides four circumstances under which a defendant may seek appellate review of a sentence imposed against him: "if the sentence (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range . . . ; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. §3742(a) (2003). In *United States v. Franz*, we determined based on the statute's structure and legislative history that a defendant may seek review of a district court's refusal to depart downward only under § 3742(a)(1)—that is, if the sentence was imposed in violation of the law. 886 F.2d 973, 977-80 (7th Cir. 1989). Therefore, "[i]f there is no legal error in the sentence . . . then there is no jurisdiction over a defendant's claim that the court should have departed downward." *United States v. Crucean*, 241 F.3d 895, 898 (7th Cir. 2001).

We have repeatedly held that there is no legal error, and therefore no jurisdiction for appellate review of a district court's refusal to depart downward, when the district court understood that it had the legal authority

to depart but, in its discretion, chose not to do so. *See, e.g.*, *United States v. Schuh*, 289 F.3d 968, 974 (7th Cir. 2002); *United States v. Albarran*, 233 F.3d 972, 978 (7th Cir. 2000); *United States v. Wright*, 37 F.3d 358, 360-61 (7th Cir. 1994).

For instance, in *United States v. Lewis*, the defendant, charged with various drug offences, argued that a downward departure was warranted because he had undergone pre-sentence rehabilitative treatment for his drug dependency. 79 F.3d 688, 692 (7th Cir. 1996). The defendant noted that under the guidelines, a downward departure may be given "if the rehabilitation is so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction." *Id.* (quoting *United States v. Harrington*, 947 F.2d 956, 962 (D.C. Cir. 1991)) (citations omitted). The district court refused to depart downward, noting that defendant's rehabilitative efforts, while honorable, were not so extraordinary that they were not adequately considered in the acceptance of responsibility reduction. *Id.* at 692-93. On appeal, we held that we had no jurisdiction to review the district court's refusal to depart because "it was clear that the district court denied Lewis' departure motion not because it lacked the legal authority to depart" but because the court determined that Lewis's rehabilitative efforts simply were not extraordinary enough to warrant a departure. *Id.* at 693.

Similarly, the transcript of Aron's sentencing hearing reveals that the district court recognized that it had the authority to depart but found that the facts simply did not warrant the exercise of that authority. The court stated: "Given the totality of the facts and circumstances of this case . . . I find that it is not unreasonable to conclude that intended loss of an additional eight million dollars was contemplated by the defendant and that a loss based on the additional eight million dollars is not impossible or fanciful." (S.Tr. at 21.) This statement reveals that

the court recognized that it could depart if the intended loss was impossible, but refused to depart because it made the factual determination that the intended loss in this case was not impossible. Therefore, the district court committed no legal error, and we lack jurisdiction over this appeal.

Moreover, even if the district court did not recognize its authority to depart, we still would be without jurisdiction because the district court had a separate and independent reason for refusing the downward departure. The court stated that even assuming that the intended loss was impossible, it would not grant a downward departure because "based on the defendant's criminal history, particularly his recent criminal history at an advanced age, that it would not be the appropriate exercise of this court's discretion to grant such a downward departure." This alternative reason for refusing to depart was an exercise of the district court's discretion that is not reviewable by this court. *See United States v. Wright*, 37 F.3d 358, 360-61 (7th Cir. 1994) ("We have no jurisdiction to review a district court's discretionary refusal to depart downward from the Guidelines.").

### III.  Conclusion

For the foregoing reasons, we lack jurisdiction to review the district court's refusal to grant a downward departure. This appeal is DISMISSED.

A true Copy:

       Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*