# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3866

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SERGIO ZUNIGA-LAZARO,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-CR-58—**John C. Shabaz**, *Judge.*

———————

ARGUED SEPTEMBER 21, 2004—DECIDED NOVEMBER 3, 2004

———————

Before MANION, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* Sergio Zuniga-Lazaro, a citizen
of Mexico, pleaded guilty to being present in the United
States without the permission of the Attorney General after
previously having been deported. The district court ordered
him to serve a prison term of 57 months, a sentence at the
top of the range specified by the Sentencing Guidelines.
Zuniga-Lazaro appeals, contending that the district court
may have denied his request for a downward departure be-
cause it misunderstood the nature of one of his prior con-
victions and that the court erred in assigning criminal
history points to that and certain other prior convictions.

We have no jurisdiction to review the discretionary denial of Zuniga-Lazaro's departure motion; and although the court did err in assigning criminal history points to one of his prior convictions, we are satisfied that the error had no impact on the sentencing decision. We therefore affirm the sentence.

## I.

Zuniga-Lazaro has been entering this country illegally since 1980. In 1992, he was convicted in an Illinois court of aggravated criminal sexual abuse. After he finished serving his 90-day jail term for that offense, the Immigration and Naturalization Service ("INS") took him into custody but released him on bond pending a deportation hearing. Zuniga-Lazaro failed to appear for that hearing and was deported in absentia on September 8, 1992. He remained at large for nearly seven years. Following his arrest in Billings, Montana, Zuniga-Lazaro departed the country voluntarily on August 26, 1999. He re-entered the country within weeks, however. In January 2002, he was arrested in Minneapolis and charged with theft. At that time, the 1992 removal order was reinstated and the INS removed him to Mexico on February 1, 2002. He returned to the United States in March of the following year.

On April 23, 2003, the Wisconsin State Patrol arrested Zuniga-Lazaro in Janesville, Wisconsin, for driving without a license. The State Patrol subsequently determined that Zuniga-Lazaro previously had been deported and was present in this country illegally. The federal Bureau of Immigration and Customs Enforcement ("BICE")—the successor to the INS—took custody of Zuniga-Lazaro two days later.

A grand jury later indicted Zuniga-Lazaro for entering the United States without official permission following his prior deportation from this country. *See* 8 U.S.C. § 1326(a). Zuniga-Lazaro eventually entered into an agreement with

the government pursuant to which he agreed to plead guilty to the charge and the government agreed to recommend that the court grant him maximum credit under the Sentencing Guidelines for acceptance of responsibility. R. 15. At a change-of-plea hearing on August 6, 2003, the district court accepted Zuniga-Lazaro's guilty plea and entered a judgment of conviction. R. 28.

The Probation Office subsequently conducted an investigation into Zuniga-Lazaro's background and criminal history and prepared a Pre-Sentence Report ("PSR"). R. 34. Pursuant to the November 2002 Sentencing Guidelines, the PSR assigned a total of six criminal history points to Zuniga-Lazaro : two points for the 90-day jail term imposed on his 1992 conviction for aggravated criminal sexual abuse (*see* United States Sentencing Commission, *Guidelines Manual*, § 4A1.1(b) (Nov. 2002)); two points for an outstanding warrant for his arrest issued by a California court for violating the terms of a two-year term of probation (*see* § 4A1.1(d)); one point for a one-year sentence of conditional discharge imposed on a 1997 Illinois conviction for domestic battery (*see* §§ 4A1.1(c), 4A1.2(c)(1)); and one point for a 30-day suspended jail term and one year of probation imposed on a 2002 conviction for leaving the scene of an accident in Minnesota (*see* §§ 4A1.1(c), 4A1.2(c)(1)). R. 34 at 7-11 ¶¶ 37, 38, 41, 43. These six points placed Zuniga-Lazaro in a criminal history category of III. *Id.* ¶ 44. The Guidelines specified a base offense level of 8 for Zuniga-Lazaro's offense, *see* § 2L1.2(a); however, that was increased by 16 levels because his prior deportation followed his 1992 conviction for aggravated criminal sexual abuse, which under the Guidelines was considered a felony crime of violence. R. 34 at 6 ¶¶ 21-22; *see* § 2L1.2(b)(1)(A)(ii) & comment. (n.1(B)(ii)(I)). In view of Zuniga-Lazaro's guilty plea and consistent with the plea agreement, the PSR subtracted three levels (the maximum deduction) for acceptance of responsibility. R. 34 at 6 ¶¶ 17-18, 26; § 3E1.1. The final adjusted offense level of 21,

coupled with a category III criminal history, yielded a sentencing range of 46 to 57 months. Neither party filed any objections to the PSR.

On October 15, 2003, Zuniga-Lazaro appeared for sentencing. After confirming that his attorney had reviewed the PSR with him and that Zuniga-Lazaro had no objections to the PSR, R. 29 at 2-3, the district court reviewed and adopted the PSR's calculation of the sentencing range, R. 29 at 5. Zuniga-Lazaro's attorney made an oral motion for a downward departure from that range pursuant to Guidelines section 5K2.13, contending that Zuniga-Lazaro was suffering from a significantly reduced mental capacity at the time of his offense. R. 29 at 6.

> Defendant's other criminal history and his biography in general suggests a man of limited capacity leading a hard scrabble life. The presentence report mentions a childhood head injury and a resulting steel plate and memory problems. The probation officer conducting the interview in preparation of the report notes during her interview that the defendant had difficulty staying on track and answering questions. The defendant has no known mental health issues. He takes no medications for mental illness nor has any debilitating chemical dependency. However, given his criminal history and biography suggesting a diminished capacity, that is not the result of voluntary drug or alcohol use.

> He shows a relatively minimal history of violence and will be deported again the moment he is released from U.S. custody. Defense does not suggest that the defendant be released with a mere slap on the wrist, but given the combination of factors of diminished capacity and immediate deportation upon release the defense respectfully recommends a downward departure and suggests a sentence in the range of 18 to 24 months which under the guidelines would be the equivalent to that merited

> given a Criminal History Category III of an offense level of 13 down from an offense level of 21. Thank you, Your Honor.

R. 29 at 6-7.

The government neither supported nor opposed the motion. The Assistant United States Attorney remarked simply that "the government has no doubt that the motion is made in good faith and I just note that the . . . criminal conduct in this case is very minor but the government will not take a position on the motion." R. 29 at 7.

When given the opportunity to address the court himself, Zuniga-Lazaro made a brief statement in which he, among other things, promised that he would not re-enter the United States:

> I'm sorry. Forgive me. My parents are elderly and sick and they are about 70 years old and they are also poor. I don't want to lose them. I lost my children. I won't come back. I am sorry. And God bless everybody.

R. 29 at 7.

The district court denied Zuniga-Lazaro's departure motion. The court noted that pursuant to Guidelines section 5K2.13, a departure might be appropriate if the defendant committed the offense while suffering from a significantly reduced mental capacity. R. 29 at 7-8. However, in the court's view, there was "nothing in the record whatsoever" indicating that Zuniga-Lazaro's mental capacity was so impaired when he entered the country illegally, and consequently there was "absolutely no reason for any such downward departure." *Id.* at 8. The court pointed out that during its colloquy with Zuniga-Lazaro at the change-of-plea hearing, Zuniga-Lazaro indicated that he understood the proceedings and did not suggest at that time that he suffered from any mental health problems. *Id.* Similarly, the PSR revealed no known history of any mental illness or treatment by a mental health profes-

sional. *Id.* The court acknowledged that Zuniga-Lazaro had been beaten as a child, that he had sustained a head injury at age eight or nine that required the insertion of a steel plate, that he suffered some memory problems, and that he had difficulty "staying on track." *Id.* at 8-9. "But the defendant does not take any prescribed medications, did not report a history of any diagnosed illnesses or diseases, [and] is under no treatment whatsoever which would suggest a diminished capacity." *Id.* at 9. On that basis, the court denied the motion. *Id.*; *see also id.* at 11 ("There is nothing in the record to suggest he has any diminished mental capacity."); R. 35 (court's written statement of reasons for sentence) (finding that defendant had not established that he had reduced mental capabilities and that defendant had not committed offense while suffering from significantly reduced mental capacity). The court went on to remark that even if it were inclined to depart downward, it still would have to take into account circumstances other than Zuniga-Lazaro's mental capacity, including the nature of his offense, his criminal history, the need for incarceration, and public safety. R. 29 at 11; *see* 18 U.S.C. § 3553(a); U.S.S.G. § 5K2.13(2) & (3). The court believed that those factors supplied a second reason to deny the motion:

> The departure, number one, is not warranted and the Court does believe that this defendant will recidivate regardless of his comments to the contrary and has been involved in violence and is a serious threat of violence.

R. 29 at 11.

Having denied the request for a downward departure, the court went on to consider whether an upward departure to a higher criminal history category was appropriate in view of Zuniga-Lazaro's criminal history. *See* U.S.S.G. § 4A1.3. In discussing that possibility, the court recognized that he had a "fairly extensive" arrest record dating back to 1990. *Id.* at 9. It also noted that he had been convicted for aggravated

criminal sexual abuse in 1992. "[T]his is a significant conviction." *Id.* at 10. Finally, the court noted that there was an outstanding warrant for Zuniga-Lazaro's arrest in Minnesota on a felony charge, as well as the pending arrest warrant in California for a probation violation. *Id.* In view of these circumstances, the court believed that a criminal history category of III did not adequately account for the extent of his criminal history. *Id.*

However, the court ultimately elected not to depart upward, concluding that a sentence at the top of the Guidelines range was "sufficient to accomplish the statutory purpose of sentencing as defined in 18 U.S.C. § 3553(a) without an upward departure." R. 29 at 10; *see also* R. 35. After recounting Zuniga-Lazaro's multiple illegal entries into the United States, the court remarked:

> The Court believes that if this past activity is any indication whatsoever of the defendant's future he's likely to return to the United States at his first opportunity. That's the reason that the sentence is provided at the top of the guideline range for incapacitation and deterrence should—this should be the primary objective at sentencing.

R. 29 at 11.

## II.

### A.   Denial of Downward Departure

Zuniga-Lazaro contends that the district court committed a threshold legal error in denying his request for a downward departure for diminished mental capacity. The Guidelines authorize a downward departure if the defendant suffered from a significantly reduced mental capacity when he committed the offense. U.S.S.G. § 5K2.13 (Nov. 2002). However, such a departure is forbidden if either the facts and the circumstances of the defendant's crime or his crim-

inal history indicate a need to protect the public. § 5K2.13(2) & (3). Zuniga-Lazaro believes that the district court implicitly ruled him ineligible for a departure based on the court's perception that the aggravated criminal sexual abuse of which he was convicted in 1992 constituted a crime of violence. *See* R. 29 at 9 ("this defendant . . . has been involved in violence and is a serious threat of violence"). In fact, Zuniga-Lazaro argues, the 1992 offense does not constitute a "crime of violence" under the relevant case law; and because he believes the district court refused to consider his departure request based on an erroneous understanding of the nature of the 1992 conviction, he asks that we vacate his sentence and remand the case to the district court for reconsideration of his motion.

Generally speaking, we lack jurisdiction to review a district court's refusal to grant the defendant a downward departure so long as the district court was aware of its authority to depart and declined to do so in the exercise of its discretion. *E.g.*, *United States v. Aron*, 328 F.3d 938, 940 (7th Cir. 2003). The record in this case reveals that the district court was aware of the authority bestowed on it by section 5K2.13 to depart downward, R. 29 at 7-8, and, indeed, Zuniga-Lazaro concedes as much, Zuniga-Lazaro Reply Br. at 5. In the government's view, this makes clear that we lack jurisdiction to review the denial of Zuniga-Lazaro's departure request. Our opinion in *United States v. Cravens*, 275 F.3d 637, 641 (7th Cir. 2001), lends support to that view. *Cravens* indicates that so long as the district court has "correctly applied" the eligibility criteria set forth in section 5K2.13, 275 F.3d at 641, we may not review its findings as to these criteria, *id.* at 641-42. *Accord United States v. Duncan*, 99 Fed. Appx. 196, 199, 2004 WL 1098917, at *3 (10th Cir. May 18, 2004) (unpublished). On the other hand, there are decisions from this court dealing with a former version of section 5K2.13, which restricted the authority to depart to cases in which the defendant had committed a

"non-violent offense," *see* U.S.S.G. § 5K2.13 (Nov. 1997), holding that when the district court concludes that the defendant committed a violent offense, it is making a legal determination that the defendant is ineligible for the departure which is within our jurisdiction to review. *United States v. Poff*, 926 F.2d 588, 590-91 (7th Cir. 1991) (en banc), followed in *United States v. Mansoori*, 304 F.3d 635, 672 (7th Cir. 2002). *Accord United States v. Pizzichiello*, 272 F.3d 1232, 1238 (9th Cir. 2001) (whether underlying offense involved actual violence, for purposes of current version of § 5K2.13, is a legal determination subject to appellate review). Ultimately, we need not decide whether the district court actually was making an eligibility determination when it referenced Zuniga-Lazaro's propensity for violence nor whether we have jurisdiction to review the district court's assessment of his criminal history. Even assuming that we do have the authority to review that assessment, the district court had another, independent ground for denying the departure that would be unaffected by any holding we might render as to the characterization of Zuniga-Lazaro's criminal history in general or his 1992 conviction in particular.[1]

The record leaves no doubt that the principal basis on which the district court denied Zuniga-Lazaro's departure motion was the lack of sufficient proof that he actually suffered

---

[1] As the government points out, it is not at all clear that the district court was focusing on Zuniga-Lazaro's 1992 conviction when it spoke of his propensity to engage in violence. R. 29 at 9. Zuniga-Lazaro's substantial criminal history includes other convictions and arrests that arguably bespeak that propensity, *see*, *e.g.*, R. 34 at 10 ¶ 38 (domestic battery), and the court did not place emphasis on the 1992 conviction for aggravated criminal sexual abuse until after it had already disposed of Zuniga-Lazaro's departure motion and began to consider whether an upward departure to a higher criminal history category might be appropriate, *see* R. 29 at 9-10.

from a significantly reduced mental capacity at the time of
the underlying offense. R. 29 at 8 ("There's nothing in the
record whatsoever . . . to suggest that this defendant commit-
ted this offense while suffering from a significant[ly] reduced
mental capacity."). The court's written findings confirm that
point. R. 35. Although, in its oral remarks, the court also
cited Zuniga-Lazaro's prior record of violence, the likelihood
that he would enter the country illegally yet again, and the
possibility that he might commit other violent acts, R. 29 at
9, these were, at most, secondary reasons for denying the
departure. The court's remarks make clear that its primary
reason for denying the motion was the absence of proof that
he in fact suffered from a reduced mental capacity. *See id.*
at 9 ("The departure, number one, is not warranted . . . .");
R. 35. The determination that the record did not adequately
support the assertion that Zuniga-Lazaro suffered from a
significantly reduced mental capacity at the time of his
offense was a discretionary, merits-based determination that
falls outside of our appellate jurisdiction. *E.g.*, *United States
v. Thomas*, 181 F.3d 870, 873 (7th Cir. 1999). Zuniga-Lazaro
does not argue otherwise. As this was an entirely independ-
ent ground for the district court's decision to deny Zuniga-
Lazaro's departure motion and we are without the power to
review the court's determination on this point, we need not
further consider the arguments he has made with respect to
the departure. *Cf. Senese v. Chicago Area, Indep. Bhd. of
Teamsters Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001)
(where district court gives two independent, dispositive
reasons for ruling against appellant, and only one is
challenged on appeal, any challenge to alternate basis is
waived and we will affirm ruling).

B.  Criminal History Points for Domestic Battery and
    Leaving the Scene of an Accident

The district court adopted the PSR's assessment of
Zuniga-Lazaro's criminal history, which assigned one point

each to the one-year sentence of conditional discharge imposed on Zuniga-Lazaro's 1997 conviction in Illinois for domestic battery and the 30-day suspended jail sentence imposed on his 2002 Minnesota conviction for leaving the scene of an accident. R 34 at 10-11 ¶¶ 38, 41. Had the court assigned no points to these prior sentences, and had the district court not made the two-point error discussed in the next section, the resulting criminal history score of 2 would have placed Zuniga-Lazaro in a lower criminal history category and a lower sentencing range. In view of this court's decision in *United States v. Caputo*, 978 F.2d 972, 976-77 (7th Cir. 1992), Zuniga-Lazaro concedes that the district court committed no error by including these two sentences in the criminal history calculation. Zuniga-Lazaro Br. 25. However, Zuniga-Lazaro contends that *Caputo* was wrongly decided and urges us to overrule it. In his view, a suspended sentence as well as a sentence of conditional discharge should be treated as the functional equivalent of an expungement and on that basis excluded from the criminal history computation. As he raised no objection below to the inclusion of these two sentences in his criminal history score, our review is for plain error alone. *E.g.*, *United States v. Frazier*, 213 F.3d 409, 417-18 (7th Cir. 2000).

The court did not plainly err by assigning a criminal history point to the sentence of conditional discharge. Section 4A1.2(c)(1)(A) provides that sentences for misdemeanor and petty offenses are counted in the criminal history score, except that sentences for 15 identified offenses ranging from careless or reckless driving to trespassing—and for other offenses similar to those listed—are to be counted in the criminal history computation *only* if "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days." The parties assume that domestic battery, although not one of the crimes listed in the section 4A1.2(c)(1)A), is an offense similar to those listed, such that his domestic battery sentence can only be counted

if it required him to spend at least 30 days in jail or at least one year on probation. *See generally United States v. Boyd*, 146 F.3d 499, 501 (7th Cir. 1998) (explaining how this circuit determines whether an offense is similar to those listed in the guideline). We have our doubts about the validity of that assumption, as Illinois conditions a conviction for domestic battery on proof that the defendant intentionally or knowingly inflicted bodily harm upon, or made physical contact of an insulting or provocative nature with, a family or household member. 720 Ill. Comp. Stat. 5/12-3.2(a); *see United States v. Dillon*, 905 F.2d 1034, 1039 (7th Cir. 1990) (sentence for resisting arrest and battery on police officer properly counted pursuant to section 4A1.2(c)(1), as battery component of conviction was not similar to offenses listed in guideline); *see also United States v. Horton*, 158 F.3d 1227 (11th Cir. 1998) (per curiam) (simple assault is not similar to offenses listed in guideline) (collecting cases). We may set that issue aside, however. Even assuming that domestic battery is similar to the listed offenses, Zuniga-Lazaro's sentence would be excluded from the criminal history computation only if we agreed with him that a one-year sentence of conditional discharge is not the functional equivalent of a one-year sentence of probation, which by the plain language of the guideline must be counted.

As Zuniga-Lazaro recognizes, our opinion in *Caputo* holds squarely against him on this point. We reasoned that under Illinois law, conditional discharge "is probation without the probation officer and that is a distinction without a difference so far as the purposes of the guideline exception are concerned." 978 F.2d at 977; *see also United States v. Scott*, 19 F.3d 1238, 1246 (7th Cir. 1994). Therefore, a defendant sentenced to a year or more of conditional discharge is treated as if he were sentenced to a year or more of probation, and the sentence is counted under section 4A1.2(c)(1). *Caputo*, 978 F.2d at 976-77. Since we decided *Caputo*, we have not only reaffirmed its rationale, *see United States v. Damico*,

99 F.3d 1431, 1438 (7th Cir. 1996), but extended it to sentences of court supervision, *see Boyd*, 146 F.3d at 502 (citing *United States v. Binford*, 108 F.3d 723, 727 (7th Cir. 1997)). Other circuits have likewise concluded that sentences of conditional discharge and probation are equivalent for purposes of section 4A1.2(c)(1). *See United States v. Rollins*, 378 F.3d 535, 538 (6th Cir. 2004) (collecting cases); *see also United States v. Labella-Szuba*, 92 F.3d 136, 138 (2d Cir. 1996) ("every circuit that has compared a conditional discharge sentence to a sentence of unsupervised release has found them to be functionally equivalent"). Zuniga-Lazaro does not cite, and we cannot find, any case that rejects *Caputo*'s holding. Although, as he points out, the Eighth Circuit has held that a stayed sentence, under Minnesota law, is not the equivalent of probation for purposes of the guideline, *United States v. Johnson*, 43 F.3d 1211, 1215-16 (8th Cir. 1995), the court simply distinguished *Caputo* (and Illinois' treatment of conditional discharge) rather than expressing any doubt about *Caputo*'s reasoning; indeed, as *Johnson* itself noted, the Eighth Circuit has adopted *Caputo*'s holding as to sentences of conditional discharge, *id.* (citing *United States v. Lloyd*, 43 F.3d 1183, 1187-88 (8th Cir. 1994)). "We do not take lightly suggestions to overrule circuit precedent," *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Steinberg*, 32 F.3d 269, 272 (7th Cir. 1994), and we discern no basis for doing so here, particularly given the constraints of plain error review.

As for the sentence imposed on Zuniga-Lazaro's 2002 conviction for leaving the scene of an accident, we note that the sentence included not just a suspended 30-day jail term but also a one-year term of probation. R. 34 at 11 ¶ 41. The plain language of section 4A1.2(c)(1)(A) dictates that a one-year sentence of probation for offenses including leaving the scene of an accident shall be included in the defendant's criminal history score. Consequently, irrespective of how the suspended 30-day jail term would be treated standing alone,

the probation portion of the sentence suffices to bring Zuniga-Lazaro's sentence within the guideline. *See, e.g., United States v. Tomasi*, 313 F.3d 653, 657 (2d Cir. 2002) (sentence including suspended jail term of zero to 30 days plus probation term of at least one year properly assigned one point pursuant to § 4A1.2(c)).

C. Criminal History Points for 1992 Sexual Abuse Conviction

Consistent with the PSR, the district court assigned two criminal history points to the sentence of 90 days in jail and three years' probation imposed on March 6, 1992 pursuant to Zuniga-Lazaro's conviction for aggravated criminal sexual abuse. *See* R. 34 at 9 ¶ 37. However, because the sentence was imposed more than 10 years before Zuniga-Lazaro entered the country illegally (on or about March 5, 2003), it should not have been assigned any points in the calculation of his criminal history score. § 4A1.2(e)(2), (3); *see United States v. Donaghe*, 50 F.3d 608, 612 (9th Cir. 1994). The government correctly concedes that the district court erred. However, because no objection was raised below to the computation of Zuniga-Lazaro's criminal history score, the error must rise to the level of "[a] plain error that affects substantial rights" before we may recognize it on appeal. Fed. R. Crim. P. 52(b); *e.g., United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002).

Although, given the straightforward language of the guideline, the error here was plain in the sense of being "clear or obvious," *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004), or " 'palpably wrong,' " *United States v. Bauer*, 129 F.3d 962, 964 (7th Cir. 1997) (quoting *United States v. Flores-Sandoval*, 94 F.3d 346, 351 (7th Cir. 1996)), we are satisfied that it did not affect Zuniga-Lazaro's substantial rights. Had the probation officer and the court not assigned two criminal history points to the 1992 conviction, Zuniga-

Lazaro would have had a criminal history score of four rather than six. However, that lesser score still would have placed him in a criminal history category of III, and the sentencing range would have been unaffected. The record gives us no reason to believe that the district court might have sentenced Zuniga-Lazaro other than at the top of that range simply because his criminal history score was two points less than it assumed. On the contrary, the court, as have noted, was concerned that a criminal history category of III did not adequately reflect the gravity of Zuniga-Lazaro's record or the likelihood that he would re-offend, and for that reason it considered departing upward to a higher criminal history category. R. 29 at 10; *see also* R. 35. The court ultimately decided against a departure, reasoning that a sentence at the high end of the sentencing range would sufficiently account for its concern. R. 29 at 10; R. 35. Knowing that Zuniga-Lazaro's correct criminal history score was four rather than six would not have altered this decision. In short, the error in calculating his criminal history score was harmless. *See United States v. Berkey*, 161 F.3d 1099, 1103-04 (7th Cir. 1998) (even if court erred in calculating criminal history score, relief not warranted on plain error review where criminal history category unaffected).

## III.

Having concluded that we lack jurisdiction to review the district court's denial of Zuniga-Lazaro's request for a downward departure pursuant to section 5K2.13 of the Guidelines and that the district court committed no plain error that affected his substantial rights in computing his criminal history score, we AFFIRM Zuniga-Lazaro's sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*