In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2078

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHANE A. VIREN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:13-cr-40057-SLD-1 — **Sara Darrow**, *Judge.*

ARGUED JUNE 1, 2016 — DECIDED JULY 5, 2016

Before WOOD, *Chief Judge,* and BAUER and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-appellant, Shane A. Viren ("Viren"), entered a guilty plea to three counts of sexual exploitation of a minor, violations of 18 U.S.C. § 2251(a), and one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B). Although the plea agreement limited Viren's sentence to a maximum of 360 months' imprisonment, the district court rejected the plea agreement and sentenced

Viren to 600 months (the statutory maximum) each on the
three counts of sexual exploitation of a minor, and 240 months
(also the statutory maximum) on the possession of child
pornography count, to be served concurrently. Viren appeals
his sentence, arguing that the district court abused its discre-
tion by failing to explain why it rejected his initial written plea
agreement. He also argues that the district court erred in
raising his criminal history category from II to V.[1] We reject
Viren's arguments and affirm his sentence.

## I. BACKGROUND

In March 2012, an adult woman reported to the Rock Island
Police that Viren had raped her three years earlier, that he
possessed child pornography, that he possessed nude photo-
graphs of her, and that he was using the photographs as
blackmail to force her to continue to have sex with him. Based
on this information, Rock Island Police executed a search
warrant at Viren's apartment on March 24, 2012, and seized
over 40 digital devices. The police also interviewed Viren on
the day of the search. He admitted downloading child pornog-
raphy from the internet and estimated that his collection
contained thousands of photographs and dozens of videos.

---

[1] As Viren conceded at oral argument, his third argument (that his 2002
state conviction for sexual assault of an adult victim could not provide a
basis for a sentence enhancement under 18 U.S.C. § 2252A(b)(2) based on
the language of the statute) has been soundly rejected by the United States
Supreme Court in *Lockhart v. United States*, – U.S. –, 136 S. Ct. 958, 968–69
(2016). It need not be addressed here.

Police conducted a forensic examination of Viren's digital devices and found a minimum of 876 images and 130 videos. One digital folder contained 334 images of infants and pre-pubescent females with their genitals exposed. Some of these images were sexually explicit photographs of Viren's infant daughter (age three months) and of Viren's fiancee's two toddler nieces (ages two and three years old). At least ten images were of young children in bondage. Two images entailed bestiality.

Police arrested Viren on June 17, 2013. After being given *Miranda* warnings, Viren admitted that he took the sexually explicit photographs of his daughter and his fiancee's nieces. He also admitted that he rubbed, kissed, and licked the genitals of all three girls. He told police he had used the photographs of the girls for his own sexual pleasure and gratification.

A grand jury indicted Viren with three counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251 (one count for each of Viren's daughter and Viren's fiancee's two nieces) and with one count of possession of child pornography in violation of 18 U.S.C. § 2252A. Viren entered into a written plea agreement with the government; in exchange for entering a guilty plea to all four counts, Viren's total sentence would not exceed a maximum of 360 months (30 years) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). On April 3, 2014, Viren withdrew his not guilty plea and entered a guilty plea. The district court recognized the maximum sentence contemplated by the plea agreement, but warned Viren that it could reject

the plea agreement. To ensure Viren understood that the district court was not bound by the agreed-upon sentence, it asked Viren: "So, do you understand that if I choose not to follow that term of this plea agreement and I sentence you to something above 30 years, that I will give you the opportunity to withdraw your plea of guilty? Do you understand that?" Viren replied, "Yes." The district court explained that it wanted to review the presentence report ("PSR") prior to determining Viren's sentence. The district court set the sentencing hearing for August 14, 2015.

At the sentencing hearing on August 14, 2015, and after reviewing the PSR, the district court rejected the written plea agreement, stating: "I'm notifying the parties that I'm rejecting the terms of the plea agreement; I will not accept the 360-month cap." Viren asked for and was given a continuance to September 4, 2014, to consider how to proceed. At the September 4, 2014, hearing, the district court stated it had rejected the written plea agreement "due to [the court's] disagreement with the 11(c)(1)(C) component, that being the cap of 360 months." The district court granted Viren's motion to withdraw his guilty plea.

On February 19, 2015, Viren again withdrew his not guilty plea and entered an "open" guilty plea ("open" because there was no written plea agreement and no negotiated sentencing range). At that time, the district court advised Viren of the possible penalties for each charge: a minimum of 25 years to a maximum of 50 years in prison for each of counts 1, 2 and 3, and a minimum of 10 years to a maximum of 20 years in prison for count 4. Sentencing was set for May 7, 2015.

The PSR correctly represented the minimum and maximum sentences, assigned a total offense level of 43, and increased Viren's criminal history category from II to V pursuant to § 4B1.5 of the United States Sentencing Commission Guidelines Manual. The PSR also included other pertinent information about Viren, including: Viren sustained a 2002 state conviction for raping a woman who suffered from cerebral palsy and was confined to a wheelchair, for which he served four years in prison; Viren was diagnosed with pedophilia; and Viren's fiancee reported that he "would not have sex with [her] unless he was simultaneously viewing child pornography." As a result, the PSR concluded the Guidelines range was life in prison.

Prior to the second sentencing hearing, Viren submitted a sentencing memorandum. He agreed with the PSR setting his criminal history category at V. He objected to his offense level. Viren agreed that the Guidelines range was life, but he argued that he serve the statutory minimums on each count concurrently.

At the second sentencing hearing on May 7, 2015, Viren did not object to any information contained in the PSR relevant to this appeal. The district court heard arguments from Viren and the government, thoroughly considered the information in the PSR, thoroughly considered the § 3553(a) factors, and sentenced Viren to 600 months (the statutory maximum) each on counts 1, 2, and 3, and 240 months (also the statutory maximum) on count 4, to be served concurrently.

Viren appeals the district court's rejection of his written plea agreement containing the incarceration limit of 360

months and the increase in his criminal history category from II to V.

## II. DISCUSSION

We review the district court's rejection of Viren's plea agreement for abuse of discretion only. *United States v. Martin*, 287 F.3d 609, 621 (7th Cir. 2002) (citations omitted). A criminal defendant has "no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971) (citations omitted). Rather, a district court has the sound discretion to reject a plea agreement "if it [finds] the agreement would undermine the sentencing guidelines or [would] not adequately take into account the defendant's relevant conduct." *Martin*, 287 F.3d at 624 (citations omitted).

When a plea agreement contains a "specific sentence or sentencing range" under Rule 11(c)(1)(C), a district court "may accept the agreement, reject it, or defer a decision until the court has reviewed the [PSR]." Fed. R. Crim. P. 11(c)(3)(A). If a district court rejects such a plea agreement, the court "must … on the record and in open court … : (A) inform the parties that the court rejects the plea agreement; (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5).

In addition, a district court "must explain why it finds the agreement objectionable" when it rejects a plea agreement. *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998). But, the

district court must limit its comments to the plea agreement itself; the district court's "license to speak about what it finds acceptable and unacceptable—to suggest an appropriate sentencing range—is at an end." *Id.* at 453–54 (citations omitted). In other words, the district court is precluded from opining on hypothetical plea deals and participating in plea negotiations. Fed. R. Crim. P. 11(c)(1); *Kraus,* 137 F.3d at 452 (citations omitted) (cataloging cases).

We reject Viren's argument that the district court "gave no justification whatsoever" for rejecting the plea. On the contrary, at the August 14, 2015, sentencing hearing, the district court stated: "I'm notifying the parties that I'm rejecting the terms of the plea agreement; I will not accept the 360-month cap." The district court plainly stated that it was rejecting the plea agreement because it was unwilling to accept the sentencing limit as agreed to by the parties.

In addition, we view the district court's comments in the context of the entire course of proceedings. At Viren's initial change of plea hearing on April 3, 2014 (prior to the rejection on August 14, 2015), the district court warned Viren that it did not have to accept his guilty plea. The district court asked Viren: "So, do you understand that if I choose not to follow that term of this plea agreement and I sentence you to something above 30 years, that I will give you the opportunity to withdraw your plea of guilty? Do you understand that?" Viren replied, "Yes." The district court also explained that it wanted to review the PSR prior to determining Viren's sentence.

The district court warned Viren that if it wanted to sentence him to a term greater than 360 months, then it would reject his

guilty plea. When it rejected Viren's guilty plea, the district court stated: "I will not accept the 360-month cap." The reason for the rejection is clear: the district court found the sentencing limit insufficient. If it had found a 360-month or less sentence to be sufficient, it would have sentenced Viren to any term up to or including 360 months. The district court did not abuse its discretion because it explained that it rejected Viren's plea agreement due to the sentencing limit.[2] Any further opining or discussion by the district court might have invited error, as occurred in *United States v. Kraus*, 137 F.3d 447 (7th Cir. 1998).

Next, we review the district court's determination of Viren's criminal history category for plain error. *United States v. Zuniga-Lazaro*, 388 F.3d 308, 316 (7th Cir. 2004) (citations omitted). Because Viren failed to object to the determination of his criminal history category in the district court (and specifically agreed that his criminal history category was V), the error must affect his "substantial rights" to warrant resentencing. *Id.* (citations omitted).

Here, the PSR calculated Viren's total offense level to be 43, prior to applying any enhancement for recidivist conduct under § 4B1.5 of the Sentencing Guidelines. The PSR increased Viren's criminal history category from II to V under § 4B1.5,

---

[2]   We also reject Viren's argument made at oral argument that the district court should have provided guidance on what it thought would have been an acceptable sentence. Viren has waived this argument by not presenting it in his appellate briefs. *United States v. Blackman*, 199 F.3d 413, 416 n.4 (7th Cir. 1999) (citation omitted). Moreover, this kind of opining by the district court is explicitly prohibited. Fed. R. Crim. P. 11(c)(1); *Kraus,* 137 F.3d at 452 (citations omitted) (cataloging cases).

based upon his 2002 state rape conviction. Viren did not object to his criminal history category being V, either in his sentencing memorandum or at any oral argument regarding sentencing. The district court adopted the findings and calculations of the PSR.

Section 4B1.5 of the Sentencing Guidelines provides that if the instant conviction is a "covered sex crime," and the defendant has "sustain[ed] at least one [prior] sex offense conviction," then § 4B1.1 does not apply. Then, § 4B1.5 provides its own Guidelines for determination of offense level, the correlating statutory maximum terms of imprisonment that correlate for each offense level, and the mechanism for determining the criminal history category. Viren's instant convictions for sexual exploitation of a minor are "covered crimes" that bring him potentially within the ambit of § 4B1.5, as they are punishable under chapter 110 of title 18 of the United States Code. U.S.S.G. § 4B1.5(a) (2015); U.S.S.G. § 4B1.5(a) (2015), Commentary, n. 2.

But, Viren's rape conviction does not qualify as a prior "sex offense conviction" to trigger the § 4B1.5 enhancement in the criminal history category. The commentary to § 4B1.5 provides: "'Sex offense conviction' (I) means any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense *was perpetrated against a minor*; and (II) does not include trafficking in, receipt of, or possession of, child pornography." U.S.S.G. § 4B1.5, Commentary, n. 3(A)(ii) (emphasis added). Regardless of the nature of the prior sex offense conviction, to put a defendant into the ambit of § 4B1.5, the prior sex offense must have been committed against a minor. Here, Viren's prior sex offense conviction was committed against an adult. Therefore, the

district court did commit error; "given the straightforward language of the guideline [and its commentary], the error here was plain in the sense of being 'clear or obvious.'" *Zuniga-Lazaro*, 338 F.3d at 316, (quoting *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004)).

However, resentencing is not required because the calculation error did not affect Viren's substantial rights. Had the district court set Viren's criminal history category at level II, his offense level would still have been 43. An offense level of 43 with a criminal history category of II carries a Guidelines sentence of life. U.S.S.G. Ch. 5, Pt. A (2015) (sentencing table). In other words, whether Viren's criminal history category is set at level II or V, his offense level (43) still carries a Guidelines sentence of life. Had the district court applied a level II criminal history category, Viren's "sentencing range would have been unaffected." *Zuniga-Lazaro*, 388 F.3d at 317. Because the Guidelines sentence remains the same whether Viren has a criminal history category of II or V, Viren's substantial rights were not affected by the district court setting his criminal history category at V.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Viren's sentence.